IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 06-CR-0066-01 |
| JAMES GOODE | : | |

SURRICK, J.                                                                                          OCTOBER 20, 2006

## MEMORANDUM & ORDER

Presently before the Court is Defendant James Goode's Motion To Suppress Physical Evidence. (Doc. No. 73). A suppression hearing was held on October 10, 2006. For the following reasons, Defendant's Motion will be Denied.

**I.     FINDINGS OF FACT**

Shortly after 6:45 p.m. on April 7, 2004, Philadelphia Police Officer Marcus Allen commenced a surveillance of the property at 434 East Cosgrove Street ("the property"), located on the southeast corner of Ross and Cosgrove Streets in Philadelphia. (Oct. 10, 2006 Tr. at 8.) Residents of this neighborhood had previously complained to police of narcotic activity in the area. (*Id*.) The area of Ross and Cosgrove Streets is a high drug-trafficking area. (*Id.*) Approximately 50 to 100 narcotics arrests had been made in this area in the three to four-month period preceding the surveillance. (*Id.*) Officer Allen conducted the surveillance from an undisclosed location approximately eighty or ninety feet from the property. (*Id.* at 9.) He was accompanied by four other police officers, including his supervisor at the time, Sergeant Shawn Wilson, and Patrolman Frank Bonett. These officers were waiting nearby in two automobiles. (*Id.* at 8-9.)

Officer Allen observed two black males in the area of 434 East Cosgrove Street. One

male, identified as Defendant James Goode, was standing next to the front steps of the property. (*Id.* at 8.) Officer Allen knew Goode to be a narcotics dealer. (*Id.* at 10.) The other male, identified as Co-Defendant James Nole, was seated on the front steps of the property. (*Id.* at 11.) Officer Allen knew that Nole had previously been arrested for narcotics violations. (*Id.* at 10.) Approximately ten minutes into his surveillance, Officer Allen observed a white minivan pull up to the corner of Ross and Cosgrove Streets. (*Id.* at 11.) An unidentified black male exited the vehicle and approached Nole and Goode. (*Id.*) After a brief conversation, the unidentified man handed money to Goode. (*Id.*) Goode then said something to Nole, who immediately stood up and entered the house at 434 East Cosgrove Street. (*Id.*) When Nole emerged approximately ten to fifteen seconds later, he handed the unidentified man a small item or items. (*Id.*) The unidentified man reentered the minivan, which drove away. (*Id.* at 11-12.)

Approximately ten to fifteen minutes later, Officer Allen observed a black female walking westbound on Cosgrove Street toward the property. (*Id.* at 12.) She approached Nole and Goode, who had resumed their respective positions on and near the front steps of 434 East Cosgrove. (*Id.* at 12-13.) The black female engaged in a brief conversation with Nole and Goode and then handed money to Goode. (*Id.*) Goode again said something to Nole, who entered the property. (*Id.*) Ten to fifteen seconds later, Nole emerged and handed the woman a small item or items. (*Id.*) The woman then proceeded eastbound along Cosgrove Street for thirty or forty feet before entering another house. (*Id.*) Upon observing these two exchanges, and based upon his extensive experience as a narcotics officer, Officer Allen was satisfied that he had witnessed Goode and Nole engaging in illegal drug transactions. (*Id.* at 14.)

Ten minutes after the unidentified female's departure, Officer Allen observed what he

believed to be "spotters" or "lookouts" in the area. (*Id.* at 13.) Based on the movement and gestures of these individuals, Officer Allen thought that his backup officers had been identified as police. (*Id.*) The surveillance was then terminated, and Officer Allen was picked up by one of the backup teams. (*Id.* at 14-15.) Officer Allen then radioed Officer Bonnet, who was working backup on the surveillance. (*Id.* at 43.) Officer Allen informed Officer Bonnet of what he saw and instructed him to stop Goode outside the property. (*Id.*) As the officers exited their vehicles and announced themselves as police, Officer Allen heard Goode say to Nole, "Close the door, it's the police." (*Id.* at 22.) Nole, who had been seated on the front steps, jumped up and ran into the house, attempting to close the door behind him. (*Id.* at 15.) Officer Allen and another officer pursued Nole inside. (*Id*. at 23.) Officer Bonnet knew of Goode's reputation as a drug dealer. (*Id.* at 43-44.) He also knew that Goode was wanted in connection with a shooting incident. (*Id.*) In fact, Officer Bonett had been looking for Goode for seven months in connection with the shooting incident. (*Id.*) For his own safety, Officer Bonett approached the property with his gun drawn, ordered Goode to the ground, and then handcuffed him. (*Id.*)

      While Officer Allen was apprehending Nole inside the house, he observed in plain view two boxes of ammunition, two handguns, a scale used for weighing drugs, a large rock of crack cocaine wrapped in clear plastic, small purple packets which appeared to contain crack cocaine, clear glass jars containing what appeared to be marijuana, scattered United States currency, and a large brown box containing wrapped and unused clear jars. (*Id.* at 15.) These items were all clearly visible on one of two counters, on open shelves, in an open drawer, and on the floor. (*Id.* at 15-16.) After arresting Nole, Officer Allen exited the house and told Officer Bonnet to place Goode under arrest. (*Id.* at 31.) The property was secured, and the officers obtained a search

warrant for the property. The search warrant was executed and the drugs, drug paraphenalia, weapons, and ammunition were seized. Goode was taken to the 14th District Headquarters where he was searched. (*Id.* at 46.) At that time, $2,559 was seized from Goode's person. (*Id.*)

## II.     CONCLUSIONS OF LAW

In his Motion to Suppress, Defendant moves to suppress the various items of contraband found inside the property at 434 East Cosgrove Street and the $2,559 in United States currency seized from his person as the fruits of an illegal search and seizure. At the suppression hearing, Goode's attorney withdrew his motion as to the items seized inside the property, advising the Court that he was satisfied that Goode did not have a reasonable expectation of privacy in the property itself. Goode seeks suppression of the $2,559 that was seized pursuant to the search of his person that took place after his arrest. Goode argues that the police officers lacked probable cause to arrest him and that the money was seized as a result of an unlawful warrantless search. The Government responds that the officers had probable cause to arrest defendant and that the search of his person was a valid warrantless search incident to arrest.

We are satisfied that Officer Bonnet made a reasonable investigatory stop of Defendant that ultimately ripened into probable cause to arrest. The warrantless search of Defendant's person was a valid search incident to arrest. Investigative stops or seizures[1] can be justified under the Fourth Amendment if they are made based upon a police officer's reasonable suspicion. *See United States v. Roberson,* 90 F.3d 75, 77 (3d Cir. 1996) (citing *Terry v. Ohio,*

---

[1] A warrantless stop is categorized as a seizure. *See Terry v. Ohio,* 392 U.S. 1, 16 (1968) (there is a seizure "whenever a police officer accosts an individual and restrains his freedom to walk away").

392 U.S. 1 (1968) (holding that an investigative stop may be justified by less than the probable cause for an arrest)).  Reasonable suspicion must be based upon "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry,* 392 U.S. at 21.  "The fact that the stop occurred in a 'high crime area' [is] among the relevant contextual considerations in a *Terry* analysis." *Illinois v. Wardlow,* 528 U.S. 119, 124 (2000) (internal citations omitted).  Upon conducting an investigative stop, a police officer may conduct "a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual.." *Terry,* 392 U.S. at 27.  A *Terry* protective frisk may be justified when the individual is suspected of drug activity.  "Because weapons and violence are frequently associated with drug transactions, it is reasonable for an officer to believe a person may be armed and dangerous when the person is suspected of being involved in a drug transaction." *United States v. Bustos-Torres,* 396 F.3d 935, 943 (8th Cir. 2005); *see also United States v. Childs,* 131 Fed. App'x 347, 349 n.2 (3d Cir. 2005).  Accordingly, a *Terry*-stop does not automatically turn into a *de-facto* arrest merely because officers draw their firearms, force suspects to lie down on the ground, or even place them into handcuffs.  *See United States v. Clarke*, Crim No. 99-280-2, 1999 WL 773665, at *4 (E.D. Pa. Sept. 29, 1999) (citing *United States v. Clipper*, 973 F.2d 944, 952 (D.C. Cir. 1992)); *see also United States v. McGrath*, 89 F. Supp. 2d 569, 577 (E.D. Pa. 2000) (citing *United States v. Hensley*, 469 U.S. 221, 235 (1985) (approaching suspect with guns drawn and placing him in handcuffs did not "constitute a *de facto* arrest" where officers reasonably believed he was armed and dangerous); *United States v. Robertson*, 81 F. Supp. 2d 579, 582 (E.D. Pa. 2000) ("taking gun-drawn control of defendant" during *Terry* stop was "fully justified" where

5

defendant was believed to be armed and dangerous).  Further, an officer's reasonable suspicion may ripen into probable cause to arrest based on facts learned during the investigatory stop.  *See United States v. Cook*, Crim No. 04-414, 2005 WL 1484592, at *11 (E.D. Pa. June 22, 2005) (finding officers had probable cause to arrest based on facts learned during investigatory stop).

Initially, we conclude that Officer Bonett had reasonable suspicion based on articulable facts to make an investigatory stop of Defendant outside 434 East Cosgrove Street.  Officer Allen is an experienced narcotics officer who frequently investigates street-level drug sales in the 14th District.  Officer Allen conveyed to Officer Bonett that he observed Defendant engage in two open-air drug sales outside the property and ordered Officer Bonett to stop Defendant.  Officer Bonett acted reasonably when he approached Defendant with his pistol drawn.  Officer Bonett knew that Defendant was engaging in open-air drug sales and was wanted in a shooting incident.  In fact, he had been looking for Goode in connection with that shooting for seven months.  It was entirely reasonable for Officer Bonett to think that Defendant was armed and dangerous at the time.

Next, we find that Officer Bonett's reasonable suspicion ripened into probable cause to arrest Defendant.  A warrantless public arrest does not violate the Fourth Amendment "where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004).  To determine whether an officer had probable cause to arrest an individual, a court must "examine the events leading up to the arrest, and then 'decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *Maryland v. Pringle,* 540 U.S. 366, 371 (2003) (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)).  This determination is made based

on the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 230-32 (1983). Upon entering the property, Officer Allen observed in plain view two boxes of ammunition, two handguns, a scale, a large rock wrapped in clear plastic, which appeared to be crack cocaine, small purple packets, which appeared to contain crack cocaine, clear glass jars containing what appeared to be marijuana, scattered United States currency, and a large brown box containing wrapped and unused clear jars. Prior to that, Defendant was seen engaging in two hand-to-hand drug transactions along with Nole in an area known for heavy narcotics activity. After viewing the contraband inside the property and arresting Nole, Officer Allen instructed Officer Bonett to arrest Defendant. These facts clearly gave rise to probable cause to arrest Defendant.

Finally, Officer Bonett's search of Defendant at the 14th precinct headquarters was a valid search incident to arrest, or alternatively, a valid inventory search. "It is undisputed that when a police officer arrests a person, the officer may conduct a full search of the person incident to the arrest." *Torrence v. Sobina,* Civ. No. 06-3526, 2006 WL 2559480, at *1 (E.D. Pa. Aug. 31, 2006) (citing *United States v. Robinson,* 414 U.S. 218, 224-26 (1973)). "The rationale underlying such a search is the officer's safety. Specifically, a search of the person incident to arrest allows the officer to remove any weapons and to preserve any evidence or fruits of crime that the person may have." *Id.* at *1. Moreover, "police officers may lawfully conduct an inventory search, 'as part of the routine procedure incident to incarcerating an arrested person,'" including any "article in [the person's] possession, in accordance with established inventory procedures." *United States v. Sanders*, Crim. No. 97-591, 1998 WL 67547, at *5 (E.D. Pa. Feb. 18, 1998) (citing *Illinois v. Lafayette,* 462 U.S. 640, 648 (1983)). The governmental interests justifying an inventory search include protecting the station house from theft and protecting the

arrestee, officers, and others from harm. *Lafayette*, 462 U.S. at 646-47.  Since Officer Bonett's arrest of Defendant was lawful, the search of Defendant's person was clearly proper.  Accordingly, we conclude that the government's seizure of the $2,559 from Defendant did not violate Defendant's constitutional rights.  For these reasons, Defendant's Motion to Suppress will be denied.

      An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 06-CR-0066-01 |
| JAMES GOODE | : | |

## **ORDER**

AND NOW, this 20th day of October, 2006, upon consideration of Defendant James Goode's Motion To Suppress Physical Evidence (Doc. No. 73) and all papers filed in support thereof and in opposition thereto, and after a hearing in open court, it is ORDERED that the Motion is DENIED.

IT IS SO ORDERED.

BY THE COURT:

/s/ R. Barclay Surrick
U.S. District Court Judge